CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

OCT 1 6 2007

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| MARK D. SIMMONS | ) | |
|     Plaintiff, | ) | Civil Action No. 7:06cv00642 |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | By: Hon. Michael F. Urbanski |
| Commissioner of Social Security, | ) | United States Magistrate Judge |
|     Respondent. | ) | |

## MEMORANDUM OPINION

Plaintiff Mark D. Simmons ("Simmons") brought this action for review of the Commissioner of Social Security's decision denying his claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"). 42 U.S.C. §§ 401-33, 1381-1383 (2000). The parties have consented to the Court's jurisdiction and the case is before the Court on cross motions for summary judgment. Having reviewed the record, and after briefing and oral argument, the case is reversed and remanded to the Commissioner for further administrative proceedings pursuant to Sterling Smokeless Coal Co. v. Akers, 131 F.3d 438, 439-440 (4th Cir. 1997).

I.

Simmons was born on September 13, 1962 and attended school through the sixth grade. (Administrative Record ("R.") at 69, 93) His past relevant work was that of a construction laborer. (R. 498-99) Simmons protectively filed applications for DIB and SSI payments on August 29, 2003. He alleges that he became disabled on February 19, 2001, due to seizures, panic attacks, emphysema, and broken vertebrae in his neck. (R. 66, 69, 87) Under the Social Security Act, an individual is entitled to DIB if he is insured for disability benefits, has not

attained retirement age, has filed an application for disability insurance benefits, and is under a disability. 42 U.S.C. § 423(a). An individual is entitled to SSI if he meets certain income requirements and are either blind, over the age of 65, or under a disability. 42 U.S.C. § 1381-83(a). "Disability" is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Simmons' claim was denied initially and on reconsideration; he then requested an administrative hearing. (R. 36-38; 41-43; 51-53; 58-61)

Following an administrative hearing on September 27, 2004, in a decision eventually adopted as the final decision of the Commissioner, an Administrative Law Judge ("ALJ") found that Simmons met the nondisability requirements for a period of disability and DIB, and was insured for benefits through the date of the ALJ's decision. (R. 27) The ALJ proceeded to determine whether Simmons was disabled through the relevant period, pursuant to the five-step process outlined in the Code of Federal Regulations. See 20 C.F.R. § 404.1520(a)(4) (2007). Under the regulations, an ALJ must consider, in sequence, whether a claimant (1) is working, (2) has severe impairments, (3) has a medical impairment that meets or exceeds the severity of one of the impairments listed in Appendix I of 20 C.F.R. Part 404, subpart P; (4) can return to past work, and if not, (5) retains the capacity to perform specific jobs that exist in significant numbers in the national economy. Id. In this five-step process, the claimant bears the burden of production and proof during the first four steps of the inquiry. Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). At the fifth step, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform. Id. at 35. When a decision

is made at any step that the claimant is disabled or not disabled, the review need not continue to the next step. 20 C.F.R. § 404.1520.

Based on the testimony presented at the hearing, including that of a vocational expert ("VE"), the ALJ determined that Simmons retained the residual functional capacity ("RFC") to perform a significant range of light work[1] and accordingly, was not disabled under the Act. (R. 27-28) On September 26, 2006, the Appeals Council of the Social Security Administration denied Simmons' request for review. (R. 8-11) This denial became the Commissioner's final decision, 20 C.F.R. §§ 404.981, 416.1481, which was appealed to this court pursuant to 42 U.S.C. § 405(g).

Simmons argues that the ALJ erred in two respects. First, Simmons contends that the ALJ failed to properly consider Simmons' psychological impairments. Specifically, he argues that the ALJ's opinion neither mentions nor evaluates the findings of Jeffrey Luckett, a psychologist who conducted a consultative examination of Simmons in 2001 and concluded that Simmons suffers from disabling mental impairments. Simmons contends that by ignoring Luckett's findings, the ALJ failed to follow the procedure for evaluating mental impairments set forth in 20 C.F.R. §§ 404.1520a and 416.920a. Second, Simmons argues that the ALJ improperly evaluated Simmons' medical records and complaints of pain and erred in concluding that his complaints are not credible. He contends that his complaints of pain, swelling, and fatigue are well supported by the findings in his medical records and that consequently, the ALJ

---

[1] Light work requires an ability to lift up to 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. It also requires an ability to walk or stand often, and sit most of the time with some pushing and pulling of arm or leg controls. 20 C.F.R. 416.967(b).

3

erred in finding that his physical limitations do not preclude him from all employment. These arguments shall be addressed in turn.

## II.

Judicial review of a final decision regarding disability benefits under the Act is limited to determining whether the ALJ's findings "are supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (citing 42 U.S.C. § 405(g)). Accordingly, the reviewing court may not substitute its judgment for that of the ALJ, but instead must defer to the ALJ's determinations if they are supported by substantial evidence. Id. Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). In determining whether substantial evidence supports the Commissioner's decision, the reviewing court must consider whether the ALJ analyzed all of the relevant evidence and sufficiently explained her findings and her rationale in crediting evidence. See Sterling Smokeless Coal Co. v. Akers, 131 F.3d 438, 439-40 (4th Cir.1997).

## III.

Simmons' first objection is that the findings of psychologist Jeffrey Luckett were completely ignored by the ALJ in her determination that "there is no evidence of [psychological impairments] that would preclude all work activity since mental functioning is generally within normal limits, despite some symptoms of depression and anxiety." (R. 24) Luckett conducted a consultative examination of Simmons in 2001 and concluded that Simmons was severely clinically depressed; had minimal use of judgment, logic, and reasoning; underdeveloped coping and problem solving skills; and a significant affective disturbance of an anxious and depressive

4

impairments. (R. 175-82) Specifically, Luckett found that Simmons had a Beck Depression Inventory score of 33, indicating a severe range of clinical depression; a full scale IQ score of 72, indicating borderline range of intellectual functioning; and a Global Assessment of Functioning ("GAF") score of 48 to 55.[2] (R. 175-81)

In addition to Luckett's examination report, the record also includes the results of a Mental RFC examination conducted by Dr. Eugenie Hamilton and a Psychiatric Review Technique performed by Dr. Hugh Tenison. (R. 354-59, 395-408) Dr. Hamilton concluded that Simmons has some limitations on concentration and social interaction due to anxiety, but is capable of performing simple, unskilled, competitive work. (R. 356) Dr. Tenison concluded that Simmons has mild limitations in his activities of daily living, mild difficulties in maintaining social functioning and maintaining concentration, persistence, or pace, and no episodes of decompensation. (R. 405)

When a claimant alleges disability due to a mental condition, the Commissioner must follow a special technique set forth in 20 C.F.R. §§ 404.1520a and 416.920a. Using this technique, the ALJ must first evaluate the claimant's pertinent symptoms, signs, and laboratory findings to determine whether the claimant has a medically determinable mental impairment. If the ALJ determines that a claimant has a medically determinable mental impairment, she must specify the symptoms, signs, and laboratory findings that substantiate the presence of the

---

[2] The GAF scale ranges from zero to one hundred and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32 (4th ed. 1994). A GAF of 41-50 indicates than an individual has "[s]erious symptoms . . . OR serious difficulty in social, occupational or school functioning . . . ." Id. A GAF of 51-60 indicates "[m]oderate symptoms . . . OR moderate difficulty in social, occupational, or school functioning . . . ." Id.

impairment. 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). The ALJ must then rate the degree of functional limitation resulting from the impairment. §§ 404.1520a(b)(2), 416.920a(b)(2). The ALJ's "written decision must incorporate the pertinent findings and conclusions based on the technique," as well as show the "significant history, including examination and laboratory findings, and functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s)." §§ 404.1520a(e)(2), 416.920a(e)(2). The decision must also include a specific finding as to the degree of limitation in each of four broad functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. Id.

In this case, the ALJ concluded that the "record establishes mental impairments which satisfy diagnostic listings criteria for depressive and anxiety disorders and result in moderate functional limitations." (R. 23) The ALJ concluded that Simmons has anxiety, depression, alcohol addiction, and borderline intellectual functioning, and that these impairments are severe within the meaning of the Regulations, but not severe enough to meet or medically equal a listed impairment, inasmuch as they do not result in functional limitations which fulfill the listing requirements. (R. 23) This conclusion was reached, however, without a discussion of the psychological opinions of Jeffrey Luckett, Dr. Hugh Tenison, and Dr. Eugenie Hamilton, or even a hint as to what evidence the ALJ relied upon.

Review of the ALJ's decision reveals that it is consistent with the opinions of Drs. Tenison and Hamilton. However, the ALJ does not address at all the Luckett evaluation and opinion, which categorizes Simmons as being of borderline intellectual functioning.

6

The ALJ is obliged to carefully explain her findings. Unless the ALJ has analyzed all of the evidence and has fully explained "the weight [she] has given to obviously probative exhibits, to say that [her] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Arnold v. Secretary of Health, Educ. & Welfare, 567 F.2d 258, 259 (4th Cir. 1977) (quoting Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974)). See also Sterling Smokeless Coal Co., 131 F.3d 439-40. As this necessary explanation is wholly lacking from the ALJ's opinion, this Court cannot conclude that the ALJ analyzed all relevant evidence, and thus cannot find that the ALJ's decision is supported by substantial evidence. Accordingly, a remand for further proceedings to fully explain and assess Simmons' mental impairments is necessary.

## IV.

Simmons next contends that the ALJ erred in concluding that his subjective complaints of pain are not credible. He argues that his complaints of pain, swelling, and fatigue are well supported by the findings in his medical records and that consequently, the ALJ erred in failing to find that his physical limitations preclude him from all employment.

"While the pain caused by an impairment, independent from any physical limitations imposed by that impairment, may . . . render an individual incapable of working, allegations of pain and other subjective symptoms, without more, are insufficient." Craig v. Chater, 76 F.3d 585, 592 (4th Cir. 1996) (internal citation omitted); 20 C.F.R. §§ 404.1529, 416.929. A claimant's complaints of pain must be evidenced by an underlying medical condition, and there must be either objective medical evidence confirming the severity of the alleged pain or an objectively determined medical condition of a severity which can reasonably be expected to give

7

rise to that pain. 20 C.F.R. §§ 404.1529(a),(b); 416.929(a), (b). In determining the extent to which a claimant's pain symptoms limit his ability to work, the ALJ may consider such factors as the claimant's daily activities; the location, duration, frequency, and intensity of the pain; and treatment that the claimant receives or has received for relief of the pain. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

Here, the ALJ found that Simmons' complaints of pain were not corroborated by either the medical evidence or his functional ability and thus, his pain does not preclude him from performing a significant range of light work. (R. 28) To reach this conclusion, the ALJ considered the medical evidence of record, including medical reports due to various traumatic injuries and Hepatitis C, as well as Simmons' related testimony. The ALJ acknowledged that although Simmons may suffer from some limitations due to his impairments, his testimony was "not credible to the extent that it is construed to mean that his limitations are so severe that he cannot engage in any work activity." (R. 24) The ALJ identified inconsistencies between Simmons' testimony and "the objective medical evidence, treatment regimen, and the evaluation of various examining and treating medical sources," (R. 24), such as the fact that Simmons' Hepatitis C has been stable since September 1, 2004. (R. 22, 440)

The ALJ also described examples of Simmons' lack of candor, evasiveness, and inconsistent statements that appear throughout the record. First, despite his complaints of disabling pain and limitations, Simmons, by his own admission, is capable of caring for his young children, for whom he has been staying at home and providing care for several years. (R. 24) Second, Simmons' testimony that he had been prescribed Hydrocodone for a "broken neck" sustained several years prior to the hearing was contradicted by medical records showing

8

Case 7:06-cv-00642-mfu   Document 22   Filed 10/16/07   Page 8 of 10   Pageid#: 74

that when he was seen for a head injury in 2002, no fracture was revealed upon the X-ray. (R. 25, 288) Third, while Simmons asserted that he had not worked since leaving his employer, "Hodges Signs," due to physical and mental impairments, the record indicates that he was fired from that position, and did not quit due to an impairment. (R. 25, 87, 117, 472-76) The record also indicates that after being fired from Hodges Signs, Simmons worked for another employer, at a position that required occasional heavy lifting, until he was fired for assaulting that employer. (R. 25, 476-78) Finally, the ALJ noted that Simmons' claim that he is completely unable to engage in any sustained physical activity was rendered dubious by medical records of a shoulder injury sustained while Simmons was loading a dirt bike, "a level of activity not commensurate with the degree of debilitation alleged." (R. 25)

This Court finds that the ALJ properly considered Simmons' complaints of pain and that there is substantial evidence to support the ALJ's conclusion that there is little in the documentary evidence to suggest that the "severity, frequency, and duration of physical discomfort . . . [is] as persistent, intrusive, or as progressive as [Simmons] has alleged." (R. 25)

## V.

In sum, while the Commissioner appropriately assessed Simmons' physical limitations, the Court cannot determine how the ALJ reached the decision that Simmons' "mental functioning is generally within normal limits," (R. 24), particularly given the report of the state agency psychologist, Jeffrey Luckett. The case is remanded to the Commissioner for further evaluation, explanation, and assessment of Simmons' mental impairment.

The Clerk of Court is hereby directed to send copies of this Memorandum Opinion and accompanying Order to all counsel of record.

**ENTER:** This 16th day of October, 2007.

/s/ Michael F. Urbanski
Michael F. Urbanski
United States Magistrate Judge